UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

ANDRE JACKSON,

              Plaintiff,

v.

MICHIGAN DEPARTMENT OF
CORRECTIONS et al.,

              Defendants.
_____/

Case No. 2:25-cv-80

Honorable Maarten Vermaat

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 1, PageID.8.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under

longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants MDOC, Washington, Russell, Corrigan, Desrochers, and Parish. The Court will also dismiss, for failure to state a claim, Plaintiff's official capacity claims, Fourteenth Amendment due process claims, Eighth Amendment claims, and § 1983 civil conspiracy claims against remaining Defendant Haase.

Plaintiff's First Amendment retaliation and Fourteenth Amendment equal protection claims against Defendant Haase remain in the case.

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Oaks Correctional Facility (ECF) in Manistee, Manistee County, Michigan. The events about which he complains, however, occurred at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. Plaintiff sues Defendants **MDOC**, MDOC Director **Heidi Washington**, MDOC Hearing Administrator **Richard Russell**, URF Warden **J. Corrigan**, URF Sergeant **Unknown Desrochers**, URF Captain **Unknown Parish**, and URF Corrections Officer **Unknown Haase** in their official and personal capacities. (ECF No. 1, PageID.2–3.)

Plaintiff alleges that on June 23, 2023, Defendant Haase called his name as he was leaving the dining hall. (*Id*., PageID.4.) Defendant Haase called Plaintiff "Mr. PREA" and asked for his I.D. card. (*Id.*) Plaintiff states that he had not had any contact with Defendant Haase prior to this occasion but Defendant Haase told him that he had heard about a PREA complaint filed by Plaintiff on Corrections Officer Henning, who was a colleague of Defendant Haase. (*Id.*) Defendant Haase further stated that he had been sent by other URF officials to make Plaintiff's life "a living hell," and to punish Plaintiff for his prior lawsuit against Corrections Officer Henning. (*Id.*) Plaintiff turned his back on the camera in order to show how disturbed he was by the interaction. (*Id.*) Defendant Haase then called Plaintiff a "stupid [racial slur]," and said that he would make Plaintiff "suck his dick" and would rape Plaintiff's mother. (*Id.*) Defendant Haase also called Plaintiff a "big booty f*****" and made several comments about "f***** ass [racial slur]." (*Id.* (asterisks added).) Defendant Haase then tried to hand Plaintiff his I.D. back while threatening him, telling Plaintiff to "pull it so I can put your f***** ass in segregation." (*Id.* (asterisks added).)

Plaintiff alleges that Defendant Haase subsequently wrote a false misconduct ticket on Plaintiff in order to retaliate against him. (*Id.*, PageID.5.) Plaintiff attaches a copy of a class III

4

misconduct ticket for loitering, which was written by Defendant Haase on June 23, 2023, as an exhibit to his complaint. (ECF No. 1-1, PageID.13.)

Plaintiff alleges that on July 7, 2023, Defendant Desrochers responded to Plaintiff's grievance on Defendant Haase by falsely stating that he had interviewed Plaintiff. (ECF No. 1, PageID.5.) Plaintiff attaches a copy of the step I grievance response to his complaint. (ECF No. 1-1, PageID.17.) The step I response states that Plaintiff had been interviewed and stated that everything was in his grievance and that he did not have anything further to add. (*Id.*) The response also indicates that Defendant Haase was interviewed and denied making any inappropriate comments to Plaintiff. (*Id.*) Defendant Haase also stated that he did not know who Plaintiff was and could not recall having any dealings with Plaintiff. (*Id.*) Defendant Parish denied the grievance, concluding that Plaintiff's allegations were merely hearsay and could not be substantiated. (*Id.*)

Plaintiff asserts that he was never interviewed and did not make any of the statements attributed to him in the investigation summary portion of the response, nor did he refuse to cooperate with the investigation. (ECF No. 1, PageID.5.) Plaintiff also states that Defendant Desrochers failed to review the video footage, which would have proved Plaintiff's allegations. (*Id.*) Plaintiff claims that Defendant Desrochers conspired with Defendant Haase to cover up Defendant Haase' misconduct. (*Id.*)

Plaintiff asserts that Defendant Parish reviewed the grievance response by Defendant Desrochers and upheld the response. (*Id.*) Plaintiff sent a kite to Defendant Parish to inform him that Defendant Desrochers had lied about interviewing him, to no avail. (*Id.*, PageID.7.) Based on a review of the exhibits to Plaintiff's complaint, it appears that Plaintiff's grievance appeals were

denied by Defendant Corrigan at step II, and by Defendant Russell at step III. (ECF 1-1, PageID.20–21.)

Plaintiff states that all of the Defendants conspired to violate his right to humane treatment and adversely affected his mental health. Plaintiff seeks damages and injunctive relief.

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by

a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Claims Against Defendant MDOC and Official Capacity Claims Against Individual Defendants

Plaintiff may not maintain a § 1983 action against the MDOC. A suit against an individual in his or her official capacity is equivalent to a suit against the governmental entity; in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will*, 491 U.S. at 66); *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013). Therefore, Plaintiff's claims for damages against the MDOC and the individually named Defendants in their official capacities are properly dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2)(B)(iii), 1915A(b), and 42 U.S.C. § 1997e(c).

As to Plaintiff's request for injunctive relief, although damages claims against official capacity defendants are properly dismissed, an official capacity action seeking prospective injunctive or declaratory relief is not treated as an action against the state. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985) (citing *Ex parte Young*, 209 U.S. 123, 159–60 (1908)). The *Ex parte Young* doctrine "rests on the premise—less delicately called a 'fiction'—that when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign immunity purposes." *Va. Ofc. for Prot. and Advoc. v. Stewart*, 563 U.S. 247, 255 (2011) (internal citation omitted.) The Supreme Court has cautioned that, "*Ex parte Young*

7

can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). In the present action, Plaintiff's allegations relate solely to past harm, not future risk of harm. Therefore, Plaintiff does not seek relief properly characterized as prospective, and his claims do not fit within the *Ex parte Young* exception. *See Ladd*, 971 F.3d at 581.

Moreover, the United States Court of Appeals for the Sixth Circuit has held that transfer to another correctional facility moots a prisoner's injunctive and declaratory claims. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (holding that a prisoner-plaintiff's claims for injunctive and declaratory relief became moot when the prisoner was transferred from the prison about which he complained); *Mowatt v. Brown*, No. 89-1955, 1990 WL 59896 (6th Cir. May 9, 1990); *Tate v. Brown*, No. 89-1944, 1990 WL 58403 (6th Cir. May 3, 1990); *Williams v. Ellington*, 936 F.2d 881 (6th Cir. 1991). Here, as noted above, following the Defendants' alleged misconduct in this case, Plaintiff was transferred to another facility.

For all of these reasons, Plaintiff has failed to state a claim against Defendant MDOC and the individual Defendants in their official capacities upon which relief may be granted. Accordingly, Defendant MDOC and Plaintiff's official capacity claims against the individual Defendants will be dismissed for failure to state a claim.

### B.    Defendants Washington, Russell, and Corrigan

Plaintiff does not make any allegations against Defendants Washington, Russell, or Corrigan in the body of his complaint.[2] It is a basic pleading essential that a plaintiff attribute

---

[2] It appears from the attachments to Plaintiff's complaint that his grievance appeals were denied by Defendant Corrigan at step II, and by Defendant Russell at step III (ECF 1-1, PageID.20–21).

factual allegations to particular defendants. *See Twombly*, 550 U.S. at 545 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant) (citing *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries."). The allegations in Plaintiff's complaint fall far short of the minimal pleading standards under Fed. R. Civ. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

As noted above, although Plaintiff fails to even mention Defendants Washington, Russell, or Corrigan in the body of his complaint, he attaches copies of grievance responses as exhibits which show that Defendants Russell and Corrigan responded to his grievance appeals. To the extent that Plaintiff seeks to hold Defendants Washington, Russell, and Corrigan liable based on

the supervisory capacity of their positions or their conduct in reviewing his grievance appeals, the Court notes that government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff fails to allege that Defendants Washington, Russell, or Corrigan engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them.

### C.    Defendants Parish and Desrochers

Plaintiff asserts that Defendant Desrochers lied in his response to Plaintiff's grievance when he stated that he had interviewed Plaintiff and conducted an investigation. Plaintiff states that Defendant Parish then reviewed the grievance response and failed to address the fact that Defendant Desrochers had failed to investigate Plaintiff's claims against Defendant Haase.

### 1.    Due Process

Initially, the Court notes that Plaintiff has no due process right to file a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker*

10

*v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer,* 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569–70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, the conduct of Defendants Desrochers and Parish did not deprive him of due process.

### 2.    First Amendment – Right to Petition the Government

Nor was Plaintiff's First Amendment right to petition the government violated by the conduct of Defendants Desrochers and Parish with regard to Plaintiff's grievance against Defendant Haase. The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding the right to petition protects only the right to address government; the government may refuse to listen or respond).

Moreover, the actions of Defendants Desrochers and Parish have not barred Plaintiff from seeking a remedy for his grievances. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 F. App'x 411, 415–16 (6th Cir. 2014) (citing *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)). Indeed, Plaintiff's ability to seek redress is underscored by his *pro se* invocation of

11

the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821–24 (1977). The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 578 U.S. 632, 640–44 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470–71 (6th Cir. 2001). In light of the foregoing, the Court finds that Plaintiff fails to state a cognizable First Amendment claim against Defendants Desrochers and Parish regarding Plaintiff's right to petition the government.

### 3.    Retaliation

To the extent that Plaintiff is claiming that Defendants Desrochers and Parish were motivated by a desire to retaliate against him, such a claim is entirely conclusory. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory

conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotations omitted); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims" that will survive § 1915A screening) (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998)).

In this case, Plaintiff fails to allege any facts showing that the handling of his grievance by Defendants Desrochers and Parish was motivated by a desire to retaliate against him for exercising his constitutional rights. Therefore, Plaintiff fails to state a retaliation claim against Defendants Desrochers and Parish.

### D.    Conspiracy Claims Against Defendants Haase, Desrochers, and Parish

Plaintiff claims that Defendants Haase, Desrochers, and Parish conspired to cover up Defendant Haase's misconduct. A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general

13

conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Hensley*, 693 F.3d at 695; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez*, 826 F.2d at 1538.

Plaintiff's allegations of conspiracy are wholly conclusory. He alleges no facts that indicate the existence of a plan, much less that any Defendant shared a conspiratorial objective. Plaintiff infers that Defendants had an agreement to cover up Defendant Haase's alleged misconduct from the mere fact that Defendants Desrochers and Parish denied his grievance against Defendant Haase. As the Supreme Court has held, such allegations, while hinting at a sheer "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556–57. Instead, the Court has recognized that although parallel conduct may be consistent with an unlawful agreement, it is insufficient to state a claim where that conduct "was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed . . . behavior." *Iqbal*, 556 U.S. at 680 (citing *Twombly*, 550 U.S. at 567). Because Plaintiff fails to allege any facts showing that the denial of his grievance by Defendants Desrochers and Parish was part of agreement with Defendant Haase or with each other, Plaintiff fails to state a plausible claim of conspiracy.

### E.    Defendant Haase

As set forth above, Plaintiff alleges that on June 23, 2023, Defendant Haase called him "Mr. PREA" and told him that he had heard about a PREA complaint filed by Plaintiff on

Corrections Officer Henning, who was a colleague of Defendant Haase. (ECF No. 1, PageID.4.) Defendant Haase further stated that he had been sent by other URF officials to make Plaintiff's live "a living hell," and to punish Plaintiff for his prior lawsuit against Corrections Officer Henning. (*Id.*) Defendant Haase then proceeded to call Plaintiff a "stupid [racial slur]," and said that he would make Plaintiff "suck his dick" and would rape Plaintiff's mother. (*Id.*) Defendant Haase also called Plaintiff a "big booty f*****" and made several comments about "f***** ass [racial slur]," and threatened to put Plaintiff's "f***** ass in segregation." (*Id.*) Defendant Haase then wrote a class III misconduct ticket on Plaintiff. (*Id.*, PageID.5; ECF No. 1-1, PageID.13.)

### 1. Due Process

Plaintiff asserts that Defendant Haase wrote a false misconduct on him. A prisoner's ability to challenge a prison misconduct conviction depends on whether the convictions implicated any liberty interest. To the extent that Plaintiff is seeking to assert a due process claim related to the Class-III misconduct ticket, such a claim lacks merit. A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 486–87 (1995).

First, no matter what happened with respect to any misconduct ticket, the duration of Plaintiff's sentence would not change. Plaintiff is serving a life sentence for the crime of first-degree murder. *See* MDOC Offender Tracking Information System, https://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=622337 (last visited Sep. 4, 2025).

Second, the sanctions for a disciplinary finding of guilt would not rise to the level of atypical and significant hardships. Under MDOC Policy Directive 03.3.105, Attachment D, the maximum sanctions for a Class-I misconduct conviction are as follows: 10 days of punitive

15

segregation for each violation, but not to exceed 20 days for violations arising out of a single incident; 30 days of toplock (but not to be combined with punitive segregation); 30 days of loss-of-privileges sanctions, or 60 days maximum for multiple violations arising out of a single incident; and restitution. The sanctions for Class-II and Class-III misconducts are similar, but with shorter maximum durations.

The most significant sanction and, therefore, hardship, is placement in segregation. The Supreme Court has held that placement in segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt*, 459 U.S. at 468. Thus, it is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010). Generally, courts will consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship." *Harden-Bey v. Rutter*, 524 F.3d 789, 794 (6th. Cir. 2008).

In *Sandin*, the Supreme Court concluded that the segregation at issue in that case (disciplinary segregation for 30 days) did not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484. Similarly, the Sixth Circuit has held that placement in administrative segregation for two months does not require the protections of due process. *See Joseph*, 410 F. App'x at 868 (61 days in segregation is not atypical and significant). Lesser sanctions of toplock or loss of privileges would certainly be no worse than segregation. Put simply, any penalty Plaintiff might have faced because of his misconduct convictions would not rise to the level of an atypical and significant hardship.

Accordingly, because Plaintiff has failed to identify a liberty interest impacted by any misconduct proceedings, the Court finds that, Plaintiff fails to state a plausible Fourteenth Amendment procedural due process claim.

16

### 2.    Retaliation

Plaintiff states that Defendant Haase was motivated by a desire to retaliate against him when he wrote the misconduct ticket on him. As noted above, Plaintiff must establish three elements in order to set forth a First Amendment retaliation claim against Defendant Haase: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. In addition, Plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in Defendant Haase's alleged retaliatory conduct. *Smith*, 250 F.3d at 1037.

Plaintiff alleges that he had filed a PREA grievance on a coworker of Defendant Haase. The filing of a nonfrivolous prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith*, 250 F.3d at 1037; *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). In addition, the Sixth Circuit has found that the issuance of a minor misconduct ticket may be sufficiently adverse where a prisoner loses privileges or could be confined to his cell. *See Maben v. Thelen*, 887 F.3d 252, 266–67 (6th Cir. 2018). A "threat of adverse action" may also be sufficiently adverse where it could deter a person of ordinary firmness from engaging in protected conduct. *Hill v. Lapin*, 630 F.3d 468, 472 (6th Cir. 2010). Finally, the Court notes that Plaintiff alleges that Defendant Haase specifically informed him that he was going to make Plaintiff's life "a living hell," and to punish Plaintiff for his prior PREA action against Corrections Officer Henning prior to writing a misconduct on Plaintiff. (ECF No. 1, PageID.4.) The Court concludes that at this point in the litigation, Plaintiff has set forth specific facts to proceed with his retaliation claim against Defendant Haase.

17

### 3.    Equal Protection

Plaintiff also appears to be asserting an equal protection claim against Defendant Haase. The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976).

In this case, Plaintiff specifically alleges that Defendant Haase used racial slurs while subjecting him to a false misconduct ticket. Although Plaintiff has by no means proven his claim, at this early stage of the proceedings, the Court will not dismiss Plaintiff's Fourteenth Amendment equal protection claim against Defendant Haase.

### 4.    Eighth Amendment

Finally, the Court construes Plaintiff's complaint as asserting an Eighth Amendment claim against Defendant Haase. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every

unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

As set forth above, Plaintiff alleges that Defendant Haase subjected him to verbal harassment, including the use of racial slurs and comments of a sexual nature. Allegations of verbal

harassment or threats by prison officials toward an inmate do not constitute punishment within the meaning of the Eighth Amendment. *Ivey*, 832 F.2d at 955. Nor do allegations of verbal harassment rise to the level of unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Id.* Even the occasional or sporadic use of racial slurs, although unprofessional and reprehensible, does not rise to a level of constitutional magnitude. *See Torres v. Oakland Cnty.*, 758 F.2d 147, 152 (6th Cir. 1985). Therefore, the Court will dismiss Plaintiff's Eighth Amendment claim against Defendant Haase.

### Conclusion

The Court will grant Plaintiff leave to proceed *in forma pauperis* in this action. Having conducted the review required by the PLRA, the Court determines that Defendants MDOC, Washington, Russell, Corrigan, Desrochers, and Parish will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, Plaintiff's official capacity claims, Fourteenth Amendment due process claims, Eighth Amendment claims, and § 1983 civil conspiracy claims against remaining Defendant Haase.

Plaintiff's First Amendment retaliation and Fourteenth Amendment equal protection claims against Defendant Haase in Haase's individual capacity remain in the case.

An order consistent with this opinion will be entered.


Dated:    September 19, 2025                          /s/ *Maarten Vermaat*
                                                    Maarten Vermaat
                                                    United States Magistrate Judge

20